**0IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **STEVEN D. MONROE, # R-14337,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-cv-1052-MJR** |
| | ) | |
| **ILLINOIS DEPT. of CORRECTIONS,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **JOHN R. BALDWIN,** | ) | |
| **DAVE WHITE,** | ) | |
| **JACQUELINE LASHBROOK,** | ) | |
| **LORI F. OAKLEY,** | ) | |
| **DR. SIDDIQUI,** | ) | |
| **HOLLY HAWKINS,** | ) | |
| **DR. SHAH,** | ) | |
| **DR. MOLDENHAUER,** | ) | |
| **JANE DOES #1 & #2 (Med-Tech),** | ) | |
| **JOHN DOE #1 (Med-Tech),** | ) | |
| **and JOHN DOE #2 (Med-Tech, R.N.),** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that Defendants were deliberately indifferent to his serious medical condition. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On October 17, 2017, Plaintiff began having excruciating headaches, accompanied by a loss of hearing in his right ear. (Doc. 1, p. 6). Early that morning, he handed a request slip to a

medical technician[1] making medication rounds, reporting his symptoms and asking to be seen immediately by a health care provider. (Doc. 1, pp. 6-7). Plaintiff was not called for an appointment until October 23, 2017. (Doc. 1, p. 8). In the intervening 5 days, while Plaintiff continued to suffer severe pain and hearing loss, he made daily inquiries to his gallery officers regarding the status of his sick-call request. They contacted Health Care, and were told that Plaintiff was not on the list to be seen. (Doc. 1, p. 7). On October 22, 2017, Plaintiff submitted another request slip seeking emergency treatment.

On October 23, 2017, Plaintiff submitted another emergency health care request slip. He was seen that morning by Med-Tech Jane Doe #1, who examined him and told him he had ear wax buildup, but she did not know why he was having headaches. (Doc. 1, p. 8). Based on the examination by Med-Tech Jane Doe #1, Dr. Moldenhauer prescribed medicated ear drops, ibuprofen, an antibiotic (Floxin), and scheduled Plaintiff to be seen in a week for an ear flush. Plaintiff notified Dr. Moldenhauer that he has a "PCN" allergy;[2] the doctor said the prescribed medication should not be a problem. Plaintiff began using the ear wax removal drops and ibuprofen.

On October 25, 2017, Med-Tech John Doe #1 brought Plaintiff the medicated ear drops and antibiotic pills. (Doc. 1, p. 9). Plaintiff questioned whether these medications would trigger his PCN allergy. Med-Tech John Doe #1 said he would check on this and bring the medications back, but he never returned, so Plaintiff did not get his dosage for that day.

On October 26, 2017, Med-Tech Jane Doe #2 brought Plaintiff's ear drops and antibiotics. Plaintiff explained his PCN allergy and asked if the medications were PCN-related. Med-Tech John Doe #1 did not know if they were, and left it up to Plaintiff to take the

---

[1] Plaintiff does not include this individual as a Defendant.
[2] Plaintiff does not define his use of the acronym "PCN." In the context of the doctor's proposed treatment with antibiotics, the Court will presume he is referencing an allergy to penicillin.

medications or not. He declined to take them, out of concern for a possible allergic reaction. (Doc. 1, p. 9).

The next day (October 27, 2017), no medications were delivered to Plaintiff; he sent a request addressed to the Medical Director explaining his symptoms and need to be seen immediately. (Doc. 1, p. 10).

The next morning (October 28, 2017), Plaintiff was called to see a medical technician, who called Health Care and confirmed that neither the ear drops nor the prescribed antibiotic was PCN-related. Plaintiff began taking both as prescribed.

Eleven days later (November 7, 2017), Plaintiff submitted a health care request to explain that his symptoms had not improved, the medications were not working, and he had not been called to have his ear flushed even though more than a week had elapsed. (Doc. 1, p. 10).

The next day (November 8, 2017), Plaintiff saw Dr. Shah. (Doc. 1, p. 11). Plaintiff explained that his right ear was swollen and the pain was "10 out of 10." *Id.* Dr. Shah said Plaintiff's ears would not be flushed unless he examined Plaintiff first. Plaintiff asked Dr. Shah not to push the audioscope tool all the way into his ear, but Dr. Shah did so anyway. This caused a "pop" noise in Plaintiff's ear, accompanied by severe pain and profuse bleeding. A Med-Tech then cleaned up the blood and flushed Plaintiff's ear. She told him to run water in his ear if it continued to bleed.

When Plaintiff returned to his cell, he passed out from the pain. When he awoke nearly 2 hours later, his ear was still bleeding. (Doc. 1, p. 11).

Two days later (November 10, 2017), Plaintiff's ear was still swollen and bleeding, he was still having excruciating headaches, and he had not regained the hearing in his right ear. He submitted a health care request slip.

The next day (November 11, 2017), Plaintiff was called to see a Med-Tech, who saw dried blood, swelling, and scarring in his right ear canal. She told Plaintiff he would be immediately scheduled to see a doctor. (Doc. 1, p. 12). However, Plaintiff did not see Dr. Siddiqui until November 20, 2017, 9 days later. *Id.* Meanwhile, Plaintiff submitted a grievance complaining about inadequate medical care.

After examining Plaintiff on November 20, Dr. Siddiqui opined that he never should have been given the ear drops or antibiotics. Plaintiff requested a referral to a specialist. (Doc. 1, p. 13).

On November 30, 2017, Plaintiff received the response to his grievance from Dr. Siddiqui and Nursing Director Hawkins, stating that Plaintiff's issues were addressed in the November 20 visit. On December 6, 2017, Plaintiff submitted another health care request, stating that his headaches and hearing loss continued, and asking for a specialist referral. Plaintiff appealed his grievance to Grievance Officer Oakley, noting his problems were not resolved and he had not been sent to a specialist. Oakley ruled his grievance as moot, and Warden Lashbrook concurred with the decision. (Doc. 1, p. 14). Plaintiff appealed the grievance to White (Administrative Review Board) and Baldwin (Director of the Illinois Department of Corrections, "IDOC"). (Doc. 1, pp. 14-15). On January 20, 2018, White and Baldwin denied the grievance appeal, stating that Menard officials had properly addressed Plaintiff's issues. (Doc. 1, p. 15).

Plaintiff submitted another request slip seeking a specialist referral on December 18, 2017. On December 21, 2017, Dr. Siddiqui examined Plaintiff's ear, which was still red and showed scarring. Plaintiff reported his symptoms were no better. Dr. Siddiqui said he would schedule a specialist visit in 1 week. (Doc. 1, p. 14).

On January 12, 2018, Plaintiff was seen by Med-Tech/R.N. John Doe #2, who announced he was the "institutional specialist." (Doc. 1, p. 15). However, he had never before performed an ear test. After completing the hearing test, Med-Tech/R.N. John Doe #2 told Plaintiff that he "really [is] deaf" and he would be scheduled to see an off-site specialist. *Id.*

The Complaint does not indicate whether that outside specialist visit ever occurred, or whether Plaintiff's condition was ever resolved.

Plaintiff asserts that he received substandard medical care as a result of inadequate staffing of doctors and nurses at Menard, and the lengthy delays in obtaining treatment were a direct result of too few medical providers at the prison. IDOC and Wexford Health Sources, Inc., ("Wexford") maintain policies and procedures that understaff Menard's Health Care department in light of the overcrowding of inmates there. (Doc. 1, pp. 15-17; 19-20). Under Wexford's policies/practices, medical providers fail to examine inmates' medical conditions, fail to timely respond to inmates' request slips, and fail to give adequate care for serious medical conditions. (Doc. 1, pp. 19-200. Wexford fails to adequately train medical staff. *Id.* In addition to the delays occasioned by inadequate staffing, providers have misdiagnosed Plaintiff's conditions. (Doc. 1, p. 17). Because of these policies/practices, Plaintiff's ear problem and headaches were not adequately treated and he has endured months of pain and suffering. (Doc. 1, p. 20).

Plaintiff sues IDOC Director Baldwin in his official and individual capacity. (Doc. 1, p. 3). He asserts that he informed Baldwin of Menard officials' failure to provide him with adequate medical care and treatment for his serious symptoms through at least 13 letters and grievances submitted "to him and Menard officials" between October 17, 2017, and January 17, 2018. (Doc. 1, pp. 20-21). Referring to Plaintiff's narrative, this list includes Plaintiff's health

care request slips submitted on October 17, 22, 23, and 27; November 7 and 10; and December 6 and 18, 2017; and Plaintiff's grievance submitted on November 20, 2017, which he appealed on December 14, 2017, and on January 10, 2018.  (Doc. 1, pp. 6-15).  Despite allegedly having knowledge of Plaintiff's serious medical condition and lack of adequate medical care, Baldwin did nothing to intervene.  (Doc. 1, p. 22).

Plaintiff repeats the above allegations with reference to White, Lashbrook, and Oakley, charging these Defendants with knowledge of the risk to Plaintiff's health and failure to act in response.  (Doc. 1, p. 22-26).

Plaintiff further alleges that Dr. Siddiqui failed to ensure that sick-call procedures would provide him with access to care, failed to timely respond to his requests for care, and intentionally ignored his requests to be referred to a specialist.  (Doc. 1, pp 27-29).  He makes similar claims regarding Drs. Shah and Moldenhauer (Doc. 1, pp. 32-34), and the John/Jane Doe medical providers.  (Doc. 1, pp. 35-38).  Hawkins likewise failed in her duty to see that he was given adequate care.  (Doc. 1, pp. 30-32).

For the Defendants' violations of his Eighth Amendment rights, Plaintiff requests injunctive relief to provide him with adequate medical care, as well as compensatory and punitive damages.  (Doc. 1, pp. 38-40).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim that

is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim against Drs. Siddiqui, Shah, and Moldenhauer; Hawkins; Jane Doe Med-Techs #1 and #2, John Doe Med-Tech #1, and John Doe Med-Tech/R.N. #2, for deliberate indifference to Plaintiff's serious loss of hearing and headache conditions;

> **Count 2:** Eighth Amendment claim against Wexford Health Sources, Inc., for deliberate indifference to Plaintiff's serious loss of hearing and headache conditions;

> **Count 3:** Eighth Amendment claim against Baldwin, White, Lashbrook, Oakley, and the Illinois Department of Corrections, for deliberate indifference to Plaintiff's serious loss of hearing and headache conditions.

Counts 1 and 2 shall proceed against some of the Defendants. Count 3 shall be dismissed for failure to state a claim upon which relief may be granted.

### Deliberate Indifference to a Serious Medical Condition

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does

not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

The mere fact that a prescribed treatment has proven ineffective does not state a claim for deliberate indifference. *Duckworth*, 532 F.3d at 680. However, under some circumstances, the failure to refer a prisoner to a specialist for care may amount to deliberate indifference. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (lengthy course of ineffective treatment, and refusal to order testing or specialist referral over a two-year period during which plaintiff suffered from ulcer suggested deliberate indifference).

Here, Plaintiff describes a serious and sudden hearing loss, accompanied by severe pain and a persistent headache, which clearly required medical attention. The Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

### Count 1 – Medical Providers

Taking Plaintiff's claims chronologically, the initial 5-day delay between his first request for care on October 17, 2017, and his examination on October 23 by Med-Tech Jane Doe #1 would support a claim for deliberate indifference, because his painful condition went unattended for that entire period. Nothing in the Complaint, however, indicates that the 5-day delay was the fault of Med-Tech Jane Doe #1. Plaintiff blames this and other delays on the policies and practices maintained by Wexford and the IDOC which cause untimely responses to inmates'

requests for care, as well as on the Defendant doctors and director of nursing. This matter shall be further addressed below.

When Med-Tech Jane Doe #1 examined Plaintiff, she informed Dr. Moldenhauer of her findings, and he prescribed medications and treatment for Plaintiff the same day. (Doc. 1, p. 8). These facts do not suggest any deliberate indifference on the part of Med-Tech Jane Doe #1, who took timely action after assessing Plaintiff's condition. Her inability to explain why Plaintiff was having headaches does not violate the Eighth Amendment. At this time, therefore, the claim against Med-Tech Jane Doe #1 in Count 1 shall be dismissed without prejudice.

Dr. Moldenhauer also acted in a timely fashion on October 23, 2017, to prescribe antibiotics, ibuprofen, medicated ear drops, and an ear flush for Plaintiff. Plaintiff points out that Dr. Moldenhauer did not personally examine him, but relied on the diagnosis of Med-Tech Jane Doe #1. This does not evidence deliberate indifference to Plaintiff's condition. Further, Dr. Moldenhauer responded to Plaintiff's concern about his PCN allergy, assuring him that the prescribed medications would not be a problem. The ear flush which Dr. Moldenhauer ordered to be performed in 1 week did not happen at the proper time, and Plaintiff had to send a request slip 2 weeks later before he was seen for that procedure. (Doc. 1, pp 10-11). If that delay exacerbated Plaintiff's condition, it could support a claim for deliberate indifference. However, the Complaint does not indicate that Moldenhauer was personally responsible for that delay.

Later on, when Plaintiff saw Dr. Siddiqui in November 2017, Dr. Siddiqui offered the opinion that Plaintiff should not have been treated with ear drops or antibiotics as Dr. Moldenhauer had prescribed. (Doc. 1, p. 13). A difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference, however. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin*

*v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques). If Dr. Moldenhauer's course of treatment indeed was a mistake, it would at worst amount to malpractice or negligence, neither of which rises to the level of a constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Based on the facts presented, the deliberate indifference claim against Dr. Moldenhauer in Count 1 shall also be dismissed without prejudice.

Med-Tech John Doe #1 brought Plaintiff his medicated ear drops and antibiotics on October 25, 2017, 2 days after Dr. Moldenhauer prescribed them. Plaintiff again questioned whether these medications might trigger his PCN allergy. Med-Tech John Doe #1 told Plaintiff he would return with the medications after checking on that matter, but he never did. As a result, Plaintiff was unable to take the medications. (Doc. 1, p. 9). This sequence of events may support a deliberate indifference claim against Med-Tech John Doe #1 for failing to provide Plaintiff with his prescribed treatment. Therefore, Count 1 may proceed against Med-Tech John Doe #1. However, before the Complaint may be served on this individual, Plaintiff must identify Med-Tech John Doe #1 by name.

Plaintiff's encounter with Med-Tech Jane Doe #2 was similar. When she brought his medication on October 26, 2017, Plaintiff asked whether the drugs were PCN-related. Med-Tech Jane Doe #2 did not know the answer, and told Plaintiff it was his choice whether to take the medications or not. (Doc. 1, p. 9). Plaintiff chose not to take them. These facts do not support a claim of deliberate indifference against Med-Tech Jane Doe #2, who was merely ignorant of whether the drugs prescribed by Dr. Moldenhauer could trigger his allergy. At worst, her lack of knowledge could be considered negligent, which does not violate the Constitution. She did not

deny him treatment. Med-Tech Jane Doe #2 shall also be dismissed from Count 1.

Plaintiff saw Dr. Shah on November 8, 2017, the day after he submitted a request to be seen because the ear flush had not been performed and his medications had not improved his symptoms. (Doc. 1, pp. 10-11). Dr. Shah examined Plaintiff, and his use of the audioscope injured Plaintiff's ear. Even if Dr. Shah misused the instrument, he did so in an attempt to address Plaintiff's medical complaints. Those actions might amount to malpractice or negligence, but do not indicate deliberate indifference to Plaintiff's condition. For these reasons, Dr. Shah shall also be dismissed from Count 1 without prejudice.

Three days later (on November 11), Plaintiff saw an unidentified Med-Tech (who is not named as a Defendant) because he was still having pain and swelling in his ear, with no improvement in his hearing loss or persistent headaches. Despite the Med-Tech's assurance that Plaintiff would be scheduled for a doctor visit "immediately," he did not see Dr. Siddiqui until 9 days later (November 20). That delay could support a deliberate indifference claim against the individual at fault, who appears to be the unnamed Med-Tech. Plaintiff has not named this individual as a Defendant, however. When parties are not listed in the Complaint's caption or list of parties, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

At the November 20, 2017, visit, Plaintiff requested Dr. Siddiqui to refer him to a specialist. Plaintiff repeated this request on December 6 and 18, 2017, while he pursued the appeal of his grievance. Dr. Siddiqui and Hawkins advised in their November 30, 2017,

response to Plaintiff's grievance that his medical issues had been addressed, but the Complaint mentions no further treatment during this period, when Plaintiff's symptoms were continuing. (Doc. 1, pp. 13-15).  Dr. Siddiqui saw Plaintiff for the second time on December 21, 2017, and promised to schedule a specialist visit in 1 week.  However, the "specialist" appointment did not take place until over 3 weeks later (January 12, 2018), and consisted only of a hearing test performed by an in-house provider, Med-Tech/R.N. John Doe #2.  Based on the significant delay in making any referral for further evaluation of Plaintiff's condition, from November 20, 2017, to at least January 12, 2018, Plaintiff states a deliberate indifference claim against Dr. Siddiqui that survives § 1915A review.  The apparent failure to offer Plaintiff any further treatment for his condition during that time may also be included with the claim against Dr. Siddiqui in Count 1.

Plaintiff includes Hawkins, the Director of Nursing, among the Defendants.  However, he does not allege that Hawkins ever examined him or had any direct contact with him.  Instead, he states that Hawkins responded to his November 2017 grievance by stating that Plaintiff's medical issues were addressed when he saw Dr. Siddiqui on November 20, 2017.  Plaintiff, of course, disputes that conclusion.

A response to a single grievance ordinarily does not result in liability on the part of an administrator whose role is merely to respond to a complaint raised about the misconduct of another prison official.  *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim").  In addition, however, Plaintiff claims that in Hawkins' administrative role, she was responsible for ensuring that sick-call procedures would provide him with access to care for the serious medical needs he described in his numerous sick call requests, but she failed to do so.  (Doc. 1, pp. 30-32).  While Plaintiff makes similar blanket allegations

with respect to each of the medical-provider Defendants, the claim that Hawkins bore responsibility for responding to sick-call requests is plausible in light of her position in the Health Care Unit. The same may be true of Dr. Siddiqui in his role as Medical Director. Accordingly, Plaintiff may proceed at this time with the deliberate indifference claims against Hawkins and Siddiqui based on the delays Plaintiff experienced in being scheduled to see a provider after submitting sick-call requests in October 2017 (between October 17, when he submitted his first sick call request, and October 23, when he saw Jane Doe Med-Tech #1) and December 2017 (between his December 6 sick call request, and his December 21 appointment with Dr. Siddiqui).

Finally, Plaintiff sues Med-Tech/R.N. John Doe #2. The complaint that this provider, despite claiming to be an "institutional specialist," had no experience with hearing tests does not state a claim for deliberate indifference. The hearing test result in fact confirmed Plaintiff's reported symptom of hearing loss. After completing the test, Med-Tech/R.N. John Doe #2 told Plaintiff that he would refer him to an off-site specialist. However, Plaintiff's narrative ends there, and the Complaint does not indicate whether such a referral was ever made. If the Med-Tech/R.N. John Doe #2 failed to make the specialist referral as promised, Plaintiff may be able to sustain a deliberate indifference claim against him. But since Plaintiff does not allege this, he fails to state a claim against Med-Tech/R.N. John Doe #2 upon which relief may be granted. At this time, therefore, Med-Tech/R.N. John Doe #2 shall also be dismissed from Count 1 without prejudice.

To summarize, **Count 1** shall proceed only against Dr. Siddiqui, Nursing Director Hawkins, and Med-Tech John Doe #1.

**Count 2 – Wexford**

Defendant Wexford Health Sources, Inc., ("Wexford") is a corporation that employs Defendants Siddiqui, Hawkins, and the other medical professionals, and provides medical care at the prison. However, it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Plaintiff has alleged that Wexford's policies and practices of failing to hire medical staff in sufficient numbers to adequately care for his serious medical needs and those of other prisoners caused the Menard medical providers to delay or deny care in response to his sick call requests. (Doc. 1, pp. 17-20). He further claims that Wexford fails to adequately train its employees on how to handle inmates' serious medical needs within a reasonable time. The surviving claim in Count 1 against Hawkins asserts that she failed to respond in a timely manner to Plaintiff's sick call requests reporting his serious medical conditions. Also in Count 1, Plaintiff claims that Dr. Siddiqui delayed referring Plaintiff to a specialist. These allegations may support Plaintiff's claim that Siddiqui and Hawkins either acted or failed to act as a result of Wexford's official policies and practices regarding staffing levels and the handling of inmates' requests for treatment. Accordingly, Plaintiff's claim against Defendant Wexford for the delays he experienced in obtaining medical care is not subject to dismissal at this stage. **Count 2** shall proceed for further consideration as to this issue.

**Dismissal of Count 3 – Administrators and Grievance Officials**

In order to be held liable in a civil rights action for unconstitutional conduct, "a defendant

must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). A defendant's role in responding to prisoner grievances does not ordinarily constitute "personal involvement" in the constitutional deprivation that gave rise to the grievance. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Furthermore, the doctrine of *respondeat superior* (supervisory liability) does not apply in a § 1983 action. *Sanville*, 266 F.3d at 740.

If a prisoner is under the care of prison medical professionals, non-medical prison officials, such as Baldwin, White, Lashbrook, and Oakley, "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). In contrast, a prison official may be found to be deliberately indifferent to a prisoner's serious medical needs if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008); *see also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences"); *Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir. 1999) (warden was required to act when prison officials repeatedly denied an inmate life-sustaining medication and food).

In his Complaint, Plaintiff alleges that Baldwin, White, Lashbrook, and Oakley were sufficiently informed of his medical condition and the medical providers' failure to treat him, through the 13 grievances and/or letters that he submitted to Menard officials between October 17, 2017, and January 17, 2018. (Doc. 1, pp. 21-25). However, the facts indicate that only one of these written submissions was actually seen by Baldwin, White, Lashbrook, and Oakley – Plaintiff's single grievance initiated on November 20, 2017, which he appealed up the chain of review to these administrators, who then responded by concurring with the denial of the grievance.

Eight of the "letters" referenced in Plaintiff's list of dates correspond to his health care requests which were submitted to Menard medical staff (October 17, 22, 23, and 27; November 7 and 10; and December 6 and 18, 2017). (Doc. 1, pp. 6-14, 21-23, 25). Neither Plaintiff nor the Court can presume that those sick-call requests were ever forwarded to Baldwin, White, Lashbrook, or Oakley, thus, they cannot be charged with knowledge of Plaintiff's plight based on those writings.

Plaintiff did not submit a copy of the grievance which Baldwin, White, Lashbrook, and Oakley reviewed and denied. Thus, there is no factual basis to support a claim that this grievance contained sufficient information to inform the officials who reviewed it that Plaintiff had a serious medical condition that was not being addressed by medical providers. Without a showing that Baldwin, White, Lashbrook, or Oakley knew that Plaintiff faced a serious risk of harm to his health because of the medical providers' failure to provide necessary treatment, Plaintiff cannot sustain a claim against these administrators that they consciously disregarded that risk. Accordingly, Plaintiff's deliberate indifference claim in **Count 3** against Baldwin, White, Lashbrook, and Oakley shall be dismissed without prejudice at this time.

However, because Plaintiff is seeking injunctive relief with reference to his claim that he is still in need of medical care for his condition, Defendants Baldwin and Lashbrook shall remain in the action, in their official capacity only, for the purpose of implementing any injunctive relief to which Plaintiff may ultimately be entitled if he should prevail. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

Finally, the Illinois Department of Corrections shall be dismissed from the action with prejudice. A state government agency is not a proper Defendant in a civil rights action for damages. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same). To the extent that injunctive relief may be appropriate, the IDOC Director (Baldwin, in his official capacity) remains in the action as noted above.

**Count 3** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Identification of Unknown Defendant

Plaintiff shall be allowed to proceed with his claim in Count 1 against Med-Tech John Doe #1. However, this Defendant must be identified with particularity before service of the Complaint can be made on him. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim,

but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, while no viable claim has been stated against Warden Lashbrook in her individual capacity, she shall remain as a Defendant in her official capacity only as Menard Warden. In that capacity, she shall be responsible for responding to discovery aimed at identifying this unknown Defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of the Med-Tech John Doe #1 is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) is referred to the United States Magistrate Judge for further consideration.

### Disposition

**COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendant **ILLINOIS DEPARTMENT of CORRECTIONS** is **DISMISSED** from this action with prejudice. Defendants **WHITE, OAKLEY, SHAH, MOLDENHAUER, MED-TECH JANE DOES #1 and #2,** and **MED-TECH/R.N. JOHN DOE #2** are **DISMISSED** from this action without prejudice. All claims against Defendants **BALDWIN** and **LASHBROOK** in their individual capacities are **DISMISSED** without prejudice.

The Clerk of Court shall prepare for Defendants **WEXFORD HEALTH SOURCES, INC., BALDWIN (Official Capacity Only), LASHBROOK (Official Capacity Only), SIDDIQUI,** and **HAWKINS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of

a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendant **MED-TECH JOHN DOE #1** until such time as Plaintiff has identified him by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, including a determination on the pending motion for recruitment of counsel (Doc. 3) and a plan for discovery aimed at identifying the unknown defendant with particularity.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 15, 2018**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court