IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN D. MONROE,

          **Plaintiff,**

v.

WEXFORD HEALTH SOURCES,
INC., *et al.*,

          **Defendants.**

Case No. 18-CV-01052-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of two Motions for Summary Judgment. Defendants John Baldwin, Holly Hawkins, and Jacqueline Lashbrook (IDOC Defendants) have filed a Motion for Summary Judgment (Doc. 74) and memorandum in support (Doc. 75), which Plaintiff Steven D. Monroe responded to (Doc. 80). Dr. Mohammed Siddiqui and Wexford Health Sources, Inc. (Wexford Defendants) also filed a Motion for Summary Judgment (Doc. 77) and memorandum in support (Doc. 78), which Monroe responded to (Doc. 81). For the reasons set forth below, the Court grants the Motions.

RELEVANT FACTS AND ALLEGATIONS

In the Complaint filed pursuant to 42 U.S.C. § 1983, Monroe claims that various Wexford and IDOC staff at Menard Correctional Center denied him adequate medical treatment for a headache, hearing loss, ear swelling, and ear pain (Doc. 11). Following threshold review of this matter pursuant to 28 U.S.C. § 1915A, the Court allowed Monroe to proceed with Eighth Amendment deliberate indifference claims

against Mohammed Siddiqui and Holly Hawkins (Count 1) along with Wexford Health Sources, Inc. (Count 2) because they denied Monroe medical treatment for serious and sudden hearing loss, accompanied by severe pain and a persistent headache (Doc. 7). The Court noted that Monroe did not allege that Hawkins examined him or had any direct contact with him at any point (*Id.*). The Complaint also does not indicate whether Monroe's condition was ever resolved, nor does it specify some degree of harm suffered (Doc. 1).

Monroe also sought injunctive relief. Therefore, Jacqueline Lashbrook, the Warden at Menard Correctional Center at the time, and John Baldwin, the former Director of the Illinois Department of Corrections, remained in the case as Defendants in their official capacities in order to carry out any injunctive relief should Monroe prevail.[1]

Defendants moved for summary judgment (Docs. 74, 77). Defendants set forth the following undisputed facts: Monroe alleges he first submitted a sick call request on October 17, 2017 (Doc. 75-1, p. 19). He alleges he gave a female med tech a request slip addressed to healthcare, explaining his symptoms, and requesting to immediately be seen, although he does not know what happened to the request slip (*Id.* at 20). Monroe alleges he spoke with various mental health professionals and correctional officers regarding the symptoms he was having and his request to be seen by the health care unit, but none of these individuals were Hawkins, the Director of

---

[1] The Court has since substituted Anthony Wills, current Warden of Menard Correctional Center, and Rob Jeffreys, current Director of the Illinois Department of Corrections, as the proper parties pursuant to Rule 25(d).

Nursing at Menard Correctional Center at the time (Doc. 75, pp. 2-3). Monroe alleges on October 22, 2017, he gave a female medtech a second request slip directed to health care explaining his symptoms (*Id.* at 4).

Monroe claims that on October 23, 2017, he gave a third request slip to a gallery correctional officer (Doc. 75, p. 4). Later that day, a nurse saw Monroe for his complaint of pain in his right ear (Doc. 78-1, p. 2). During the visit, he reported that he had a history of earache, ear infection, or ear surgery (*Id.*). The nurse prescribed Levaquin and Floxin ear drops (*Id.*). The nurse also referred him to a doctor for follow-up in one week (*Id.*). Monroe did not start his medications until October 27, 2017, when his provider confirmed for the second time that neither antibiotic was penicillin related (Doc. 78, p. 2). That same day, Monroe alleges that he sent a request slip addressed to "health care/ medical director," explaining he continued to have unresolved medical issues and asked to be seen immediately (Doc. 75, p. 4). At his follow up appointment on November 1, 2017, the nurse practitioner wrote that since he just started the antibiotics for his ear infection, his appointment was rescheduled for the following week (Doc. 78-1, p. 3).

On November 7, 2017, Monroe claims he gave a request slip addressed to health care to the female med-tech/nurse who was conducting medication line in his cell house (Doc. 75, p. 4). On November 8, 2017, Monroe was seen by Dr. Shah (Doc. 78-1, p. 4).[2] Monroe claims that during the visit, Shah otoscoped his right ear, causing severe pain and profuse bleeding (Doc. 1, p. 11; Doc. 81, p. 2). Monroe alleges

---

[2] The progress notes from this visit are mostly illegible.

he gave a request slip addressed to health care to a female med-tech/nurse during medication line on November 10, 2017, complaining of a swollen ear, bleeding, headaches, and trouble hearing (Doc. 75, p. 5). Monroe states he was seen the next day in the cell house pursuant to a call pass (*Id.*). Medical records reflect differing dates from Monroe's claim, showing that on November 12, 2017, Monroe called for a nurse for pain in his right ear and reported hearing loss (Doc. 78-1, p. 5). The visiting nurse noted that there was blood in his ear canal (*Id.*). Monroe was provided Tylenol for the pain and referred to a physician (*Id.*).

Monroe filled out a grievance on November 16, 2017 complaining about inadequate medical care (Doc. 75-3, pp. 1-6). After the grievance was returned due to a procedural defect, Monroe resubmitted the grievance on November 20, 2017, and it was received by the counselor the next day (*Id.* at 2-6).

Monroe also saw Siddiqui on November 20th (Doc. 78-1, p. 5).[3] At that appointment, Monroe reported to Siddiqui that at the previous visit with Shah, he had an ear flush and believed the otoscope caused him to have bleeding (*Id.*). While the progress notes inexplicably focused on Monroe's left ear, Siddiqui did note that Monroe's right ear appeared normal (*Id.*).[4] He advised Monroe to take ibuprofen and follow-up in four weeks (*Id.*).

On November 30, 2017, Hawkins responded to Monroe's grievance, noting she reviewed the grievance and his medical file and found that his medical issues were

---

[3] Monroe alleges that the progress notes for this visit were fabricated, but offers no evidence for his assertion (Doc. 81, p. 3).
[4] Siddiqui also noted that Monroe's complaint of old dried blood in his left ear canal was not visualized.

addressed by Siddiqui at his previous appointment (Doc. 75, p. 5).

On December 6, 2017, Monroe claims that he submitted a sick call request addressed to "health care/ medical director" by handing it to the med-tech/nurse conducting medication line (Doc. 75, p. 6).

In December 2017, Monroe appealed the grievance response to the grievance officer at Menard Correctional Center, noting he continued to have the same symptoms and requesting to be seen by a specialist (Doc. 75-3, p. 1). The appeal was received by the Menard Grievance Officer on December 18, 2017, and reviewed on December 21, 2017 (*Id.*). He then appealed to the Arbitration Review Board (Doc. 75-4, p. 3).

On December 18, 2017, Monroe states he gave the med tech/nurse conducting the medication line a request slip addressed to health care, requesting to be seen and explaining his symptoms (Doc. 75, p. 6). Monroe also separately conceded that Grievance Officer Lorie Oakley requested additional information from health care upon receiving his appealed November 2017 grievance and was told the health care unit had not received any additional requests during the grievance time frame (*Id.*).

On December 21, 2017, Monroe had his follow-up appointment with Siddiqui (Doc. 78-1, p. 10). Monroe complained about decreased hearing in his right ear and headaches (*Id.*). Siddiqui observed no drainage, but slight bruising in Monroe's right ear canal without bleeding (*Id.*). He referred Monroe for an audioscope appointment that occurred on January 12, 2018 (*Id.* at pp. 10-11).

On January 18, 2018, Siddiqui submitted a referral for Monroe for an audiology evaluation for hearing aids (Doc. 78-1, p. 33). On March 29, 2018, an outside provider

at Southern Illinois Healthcare saw Monroe for his reported ear pain, headaches, hearing loss, and for failing the prison hearing screening (*Id.* at p. 36). At that time, Monroe reported that he could not "hear out of his right ear and the left is good" (*Id.*). During the outside appointment, the provider reported "poor reliability and asymmetry; left ear mild unspecified [hearing loss] with normal, Type A, tympanometry. Right ear revealed a profound mixed hearing loss with normal, Type A, tympanogram. Behavioral test est [sic] results were of poor reliability. OAE diagnostic revealed strong responses bilaterally, consistent with normal cochlear function" (*Id.*). The provider recommended to recheck Monroe's audio at a later date (*Id.*). On April 4, 2018, Monroe had a post-medical furlough follow-up with a nurse practitioner, who reported that Monroe passed the provider's hearing test (*Id.* at p. 16). Monroe was provided with a refill of Naproxen for pain (*Id.*).

Monroe did not return to medical staff regarding his earache until September 1, 2018 (Doc. 78-1, p. 18). On that date, Monroe attended sick call where he complained of an ongoing earache (*Id.*). On September 19, 2018, Monroe saw Siddiqui regarding his earache (*Id.* at p. 19). Siddiqui reviewed Monroe's March 29 audiogram report that stated testing for the right ear was inconclusive and recommended retesting (*Id.*). Siddiqiui submitted a follow-up referral to audiology (*Id.*).

On October 23, 2018, Monroe was seen by the outside provider for another hearing test (Doc. 78-1, p. 54).[5] During that visit, Monroe's results revealed a "bilateral border line mild/slight SNHL [sensorineural hearing loss] bilaterally with

---

[5] Monroe states that this visit with an outside provider for testing never occurred, but he confused the date of the of the exam (Doc. 81, p. 3).

improved word recognition scores in the right ear, symmetrical to the left ear word reorganization score from 3/29. Tympanometry is normal, Type A." (*Id.*). The provider recommended that Monroe return to audio as needed (*Id.*). Monroe did not submit any further healthcare requests related to his earaches or headaches after the exam.

At his deposition in March 2020, when asked if he was continuing to experience headaches, Monroe stated he did not know and that he recently had two surgeries he was focused on recovering from (Doc. 75-1, pp. 28-9).

## LEGAL STANDARD

Summary judgment is "the put up or shut up moment in a lawsuit" where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a trier of fact to agree with its version of events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). That "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere conclusory allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477

U.S. at 232-24.

In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). While the Court must view the evidence and draw all reasonable inferences in favor of the opposing party, "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris,* 550 U.S. 372, 380 (2007); *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007).

## DISCUSSION

### I. Deliberate Indifference Claims

Claims for deliberate indifference have an objective and a subjective component. *Estelle v. Gamble,* 429 U.S. 97 (1976). Monroe must establish that he suffered from an objectively, sufficiently serious medical condition. *Cesal v. Moats,* 851 F.3d 714, 721 (7th Cir. 2017). He must also show that Defendants actually knew

of, but disregarded, a substantial risk to his health. *Cesal,* 851 F.3d at 721. It is well-settled that mere negligence is not enough to establish a Defendant's deliberate indifference. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). In fact, even gross negligence is insufficient. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Instead, deliberate indifference is comparable to criminal recklessness. *Thomas v. Blackard,* 2 F.4th 716 (7th Cir. 2021) (citing *King*, 680 F.3d at 1018).

### A. Holly Hawkins

Monroe claims that in her administrative role, Hawkins was responsible for ensuring that sick call procedures would provide him with access to care for the serious medical needs he described in his numerous sick call requests, but she failed to do so which resulted in delays he experienced in obtaining medical care (Doc. 1, pp. 30-2). Hawkins argues that she is entitled to summary judgment as the record belies any claim that she was objectively unreasonable or deliberately indifferent to Monroe's serious medical needs. Hawkins argues that she was not personally involved in Monroe's medical care and although she ultimately denied Monroe's grievance, it was not ignored (Doc. 75, pp. 11-3).

The Court finds that Monroe failed to present sufficient evidence to support a reasonable jury finding that Hawkins acted with deliberate indifference under the Eighth Amendment. A court will not find a jail official to have acted with deliberate indifference to an inmate's medically related requests if he reasonably relied on the judgment of medical personnel. *See Miranda*, 900 F.3d at 343. Hawkins was entitled to defer to the judgment of jail health professionals, so long as she did not ignore Monroe. *See Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017); *Hayes*, 546 F.3d at

527–528; *Johnson v. Doughty,* 433 F.3d 1001, 1010–11 (7th Cir. 2006); *Greeno*, 414 F.3d at 655–656; *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Monroe did not allege that Hawkins had any direct contact with him (Doc. 7). On November 30, 2017, Hawkins received and responded to Monroe's November 20, 2017 grievance complaining about inadequate medical care. From the record, it appears this was the first time that Hawkins learned of Monroe's issues. Hawkins responded to the grievance, noting that she reviewed the grievance and Monroe's medical file and stated that Monroe's medical issues were addressed by Siddiqui on November 20, 2017. While the grievance process progressed, Monroe's medical records reflect he was treated continuously by medical professionals.

Hawkins had no "reason to doubt" that the health care unit based their recommendation on medical judgment and were adequately addressing Monroe's concerns. *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017); *Arnett*, 658 F.3d at 756 ("A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service.") (quoting *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)). Hawkins reviewed and responded to Monroe's grievance, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions. Accordingly, Hawkins is entitled to summary judgment.

### B. Mohammed Siddiqui and Wexford Health Sources, Inc.

Monroe claims that Wexford's policies and procedures resulted in delays he experienced in obtaining medical care (Doc. 1, pp. 19-20). Monroe further alleges that Siddiqui failed to ensure that sick call procedures would provide him with access to

care, failed to timely respond to his requests for care, and intentionally ignored his requests to be referred to a specialist, which resulted in delays he experienced in obtaining medical care (*Id.* at 27-9).

Siddiqui and Wexford contest that Monroe suffered from a serious medical condition. "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015)(citing *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). The Seventh Circuit has recognized numerous medical issues, including hernia, arthritis, minor burns, heartburn accompanied by vomiting, and a broken wrist, as objectively serious. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)(collecting cases). The Court, after drawing all inferences in the light most favorable to Monroe, finds that a reasonable jury could conclude that he had an objectively serious medical condition.

Siddiqui and Wexford further argue that Monroe has not demonstrated that Siddiqui acted with deliberate indifference by failing to establish that he had the requisite state of mind by intentionally or recklessly disregarding Monroe's needs. A disagreement with a doctor's medical judgment about the proper choice of treatment—or even a disagreement between two medical professionals—is not enough to establish deliberate indifference. *See Pyles,* 771 F.3d at 409. Instead, Monroe must set forth evidence that Siddiqui's "treatment strayed so far from accepted professional standards that a jury could infer the doctor acted with deliberate indifference." *Petties,* 795 F.3d at 692. In other words, a "medical professional is entitled to deference in treatment decisions unless 'no minimally

competent professional would have so responded under those circumstances.'" *Pyles,* 771 F.3d at 409 (citations and quotation marks omitted).

Viewing the evidence and all reasonable inferences in Monroe's favor, after examining the totality of his medical treatment, the record shows that Menard healthcare staff, including Siddiqui, actively provided Monroe meaningful and ongoing treatment for his right ear condition from 2017 to 2018, especially considering that the undisputed facts show that Siddiqui provided Monroe with three referrals, the last of which only found mild/slight hearing loss in his right ear, and he no longer complained of pain or headaches after two of those referrals.

Wexford additionally argues that Monroe's claim that its policies and procedures resulted in delays that he experienced in obtaining medical care lacks any evidence to support it. Because Monroe has provided no evidence of policies and procedures that would result in his alleged delay in medical care, the Court agrees.

Last, as an alternative if the Court did find deliberate indifference, Siddiqui and Wexford argue that Monroe has not presented any medical evidence that he suffered harm as a result of the alleged delay. In cases "where the plaintiff alleges the defendant delayed, rather than denied, medical treatment, [the Seventh Circuit has] required that the plaintiff present verifying medical evidence that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.,* 940 F.3d 954, 964 (7th Cir. 2019) (internal citations omitted). Again, Monroe has provided no evidence that the alleged delay caused some degree of harm.

For all of these reasons, Siddiqui and Wexford are entitled to summary judgment.

## II. Injunctive Relief

Wills and Jeffreys claim that they are entitled to summary judgment on Monroe's request for injunctive relief because he failed to demonstrate that he is entitled to an injunction. Monroe failed to challenge Wills and Jeffreys's argument. "A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it'" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations omitted). "Failure to respond to an argument results in waiver" *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). As a result, Wills and Jeffreys are entitled to summary judgment.

### CONCLUSION

Accordingly, the Court **GRANTS** the Motion for Summary Judgment (Doc. 74) and Plaintiff Steven D. Monroe's claim and request for injunctive relief against Defendants Holly Hawkins, Anthony Wills, and Rob Jeffreys is **DISMISSED with prejudice**. The Court also **GRANTS** the Motion for Summary Judgment (Doc. 77) and Monroe's claims against Defendants Dr. Mohammed Siddiqui and Wexford Health Sources, Inc. are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: September 2, 2021

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
